## Sheidle *versus* Weishlee.

1. A *feme covert* joined with her husband in a mortgage on their separate estates to secure a debt of the husband. Afterwards the husband sold his own property, and the purchaser received a deed from the husband and wife, and paid to the husband a sum supposed to be sufficient to pay the mortgage which bound both estates, but which, in fact, was not sufficient. Out of the proceeds of sale of the real estate *of the wife*, the court directed to be paid the balance due on the mortgage: *Held*, that the wife was entitled to recover from the purchaser of the husband's real estate sold as above, the amount which was paid out of the proceeds of sale of her property in discharge of the balance due on the mortgage.

2. In a suit by the wife alone, her coverture or the non-joinder of her husband can be taken advantage of only by plea in abatement: perhaps, however, since the act of 1848, a *feme covert* can maintain a suit in her own name alone.

ERROR to the Common Pleas of L̶a̶n̶caster *county*.

This was an action on the case, brought by Elizabeth Weishlee *v.* Jacob Sheidle, to recover arrears of interest on a mortgage, and also the taxes on the mortgaged premises unpaid at the execution of a deed in 1848. The plea was *non assumpsit*. Elizabeth Weishlee joined her husband in pledging her property, together with his, to secure the payment of his debt to Hatz. Afterwards her husband sold *his* property to Sheidle, for a sum more than sufficient to pay the debt, and she joined in the deed; it was alleged under the assurance that the debt would be paid out of the purchase-money. She was, notwithstanding, compelled to pay Hatz a part of the mortgage debt, which it was alleged that Sheidle

[Sheidle v. Weishlee.]

ought to have paid ; and she sued him to recover the amount so paid, together with taxes.

February 3, 1851. Jury sworn.

26 Oct. 1842. Rosina Sheller to Elizabeth Sheller, the plaintiff, deed for tenement on the north side of East King street, Lancaster.

Admitted that Elizabeth Sheller afterwards became wife of Jacob Weishlee.

15 Oct. 1846. Jacob Weishlee and wife to Christian Habacker, mortgage on plaintiff's property, above mentioned, for $500. *Eo die* recorded.

19 April 1847. David Hartman, sheriff, to Jacob Weishlee, for a two-story house and lot on south side of East King street.

Deed in partition of land.

26 April 1847. Jacob Weishlee and wife to John Hatz, mortgage on both properties to secure payment of $1400 with interest, from date, to secure bond of Jacob Weishlee. *Eo die* recorded.

1 Dec. 1848. Jacob Weishlee and wife to Jacob Sheidle, deed, consideration $1700, for the lot of Weishlee, (the same that was included in the mortgage to John Hatz,) "free of all encumbrances," except ground-rents.

Nov. 1849. Sci. fa. *v.* Elizabeth Weishlee, who survived Jacob Weishlee.

No. 31, January 1850. Levari facias. Sale of this property. Sheriff paid plaintiff's mortgage, and paid into court $565.48 on 7 Feb. 1850.

January 29, 1850. Rule to show cause, &c.

March 23, 1850. Court direct $175.38 to be paid to John Hatz on his mortgage of 26 April, 1847, and the residue to be paid to Elizabeth Weishlee.

27 March 1850. Receipt of John Hatz to prothonotary for the above sum of $175.38.

Jacob King, sworn :—I am witness to deed of Weishlee and wife to defendant. That evening there was about $300 paid in gold—after that Weishlee said it was customary for the wife to have something, and defendant gave her a $5 gold-piece. It was said this was the balance of the money besides the mortgage. Weishlee said this is the balance of the money besides the mortgage. There was something mentioned about a mortgage. I signed my name as a witness to the deed; it was in the neighborhood of $300; I don't know the exact amount; it was mentioned this is the balance of the money besides the mortgage. I have not seen Weishlee since he left.

Plaintiff closes.

*Evidence on part of Defendant.*—Admitted that there was $140 of interest due on the mortgage of 26 April 1847, to John Hatz,

at the time of the conveyance to the defendant on 1 Dec. 1848; also, that taxes were due to the amount of $35.58, which were liens on the property purchased by defendant.

John Hatz, sworn :—I had a mortgage on the two properties ; I was not present when Sheidle bought the property, and knew nothing about it. Afterwards I told him there was a good deal of back interest due. I had no conversation with Sheidle till after he bought it.

Admitted that the tax-collectors had no conversation with Sheidle about the taxes until after he purchased.

Wm. Frick, Esq., sworn :—Witness to deed to Sheidle. I took the acknowledgment ; there was a lien on the property ; the money that was paid was paid in gold ; I can't say the exact amount ; it might have been somewhere about $300 or $400 ; I did know the amount, but have forgotten ; the purchaser was to pay the lien on the premises ; that was left on the property, and the balance was paid down in gold. Mrs. Weishlee was present; it took place at Weishlee's in the front-room ; it appeared to me that there was $300 or upwards paid ; I can't be confident of the amount. There was only one claim spoken of that stood against the property, and that appeared to be Hatz's mortgage or judgment. It is a mere guess as to the amount paid ; I have no definite recollection of the amount.

Lewis, Pres't, charged as follows :—This is an action to recover money paid to the use of defendant. The plaintiff was the owner of a house and lot in Lancaster, and married Jacob Weishlee, who owned another house and lot in the same city. On the 15th Oct. 1846, she joined her husband in a mortgage on her house to Christian Habacker, to secure a debt of $500 due from her husband. On the 26th April 1847, she joined her husband in another mortgage, to secure another debt of her husband, of $1400, which was due to John Hatz. This mortgage included both houses and lots, as well that of her husband as the one which belonged to her. On the 1st Dec. 1848, Jacob Sheidle, the defendant, purchased of Jacob Weishlee the house and lot which belonged to him, and received a deed from Weishlee and wife, for the consideration stated in the deed, of $1700. At the time of executing this deed a sum, in the neighborhood of $300, was paid by Sheidle to the husband, Weishlee, in the presence of the plaintiff, which was expressed, at the time and in her presence, to be the balance, deducting the mortgage or lien of John Hatz, which Sheidle, the purchaser, was to pay. The mortgage of Habacker not being paid, the plaintiff's property was sold by the sheriff, by virtue of proceedings thereon, and on the 7th Feb. 1850, the sheriff paid into court the sum of $565.48, arising from the sale of the plaintiff's house and lot aforesaid. Out of this sum the court directed the sum of $175.38 to be paid on the mortgage of John Hatz, which was all that was

claimed. It is alleged that the *principal* of the mortgage debt has been adjusted by the defendant, and this sum was the arrearages of *interest* due on the mortgage.

When Elizabeth Weishlee joined her husband in the mortgage to John Hatz, to secure the debt of her husband, she became entitled to all the rights of a surety as against her husband: she had a right to insist on the sale of his own house and lot, to pay his own debt, before resorting to her property included in the mortgage. And in case she was compelled to pay the debt to Hatz, or any part of it, she was entitled to subrogation *pro tanto*, and had a right to enforce the Hatz mortgage against her husband's house and lot. In equity, her husband was bound to pay the debt, and his property stood pledged for that purpose. She had a right to take his house and lot into consideration when she entered into the mortgage, and it is presumed that its inclusion in the mortgage formed an inducement with her to become bound in the mortgage. This being the nature of her rights, at the time of becoming her husband's surety to Hatz, what circumstances have deprived her of her equitable claim? When Sheidle, the defendant, purchased the house and lot of her husband, the Hatz mortgage was upon record, and it appeared upon the face of it, that it was given to secure a debt of Jacob Weishlee, and that Elizabeth Weishlee was but a surety. Not only was the purchaser affected with *constructive* notice of the mortgage, but it appears from the evidence of the subscribing witnesses to his deed, that he had *actual* notice of it, and that he only paid about $300, retaining the residue of the consideration-money, and agreeing to pay the mortgage to Hatz. The money which was paid (except a $5 gold-piece to the wife for signing the deed) was paid to Jacob Weishlee himself. The plaintiff received no part of it. So that there is nothing in this to postpone her. She must be presumed to have signed the deed upon the inducements made known to her; and when it was mentioned in her presence, by the parties, that the defendant was to pay off the Hatz mortgage, she could have no reason for withholding her signature. On the contrary, this agreement would necessarily operate on her mind as an inducement to execute the conveyance, because by the proceeding she would be relieved from the Hatz mortgage. But it is complained that the defendant mistook the amount of that mortgage—that is, that he did not know that any *interest* was in arrears upon it. This was his own fault, and he cannot throw the loss upon the plaintiff. There is no evidence that she deceived him in regard to it, or even that she had any knowledge herself of the arrears of interest due. On the whole, we see nothing in the case to deprive her of her equity as surety to the extent of the sum of $175.38, which she has been compelled to pay. She is entitled, under the evidence, to recover that sum, with interest from the 23d March 1850, when

it was paid for the use of this defendant in discharge of the Hatz mortgage upon his property.

We do not know whether Jacob Weishlee is dead or alive; and, since the act of 1848, securing the rights of married women, we are not disposed to embarrass them in prosecuting suits for their property, by requiring the husband to join the action. It has been decided that a woman, in such case, is to be treated as a *feme sole.* It is true that the act of 25th April 1850 provides that a suit in such case *may* be brought in the names of husband and wife, for the use of the wife; but we think it does not enjoin it. At all events, with our present views of the law, we are not disposed to turn this woman out of court on a mere matter of form. If the Supreme Court should feel bound to do so, we are prepared to obey their direction.*

*The action was sustained in the name of the plaintiff on the general ground; but it is conceived that advantage could not be taken of the coverture without pleading it.—Per LEWIS, J.

The defendant excepted to the charge.

February 3, 1851. Verdict for plaintiff, and damages assessed at $184.44.

It was assigned for error:

1. The court erred in that part of the charge as to plaintiff's right to recover the $175, and all the reasoning and inferences which precede it.

2. In deciding that the suit was well brought, in the name of plaintiff alone, she being a married woman.

The case was argued by *Fraser,* for plaintiff in error.—The error of the court consisted in treating the case as if Jacob Weishlee had not sold, *with the plaintiff, his own property to the defendant below,* (*Sheidle.*)

When Weishlee sold his property, in December 1848, "*free of all encumbrances except ground-rent,*" to said Sheidle, his wife (the plaintiff below) was a co-grantor; the consideration was $1700, of which $300 were paid in cash, and the remainder, $1400, was to remain in grantee's hands to meet Hatz's mortgage, which $1400 was the amount of same. A mistake was made in not keeping back the interest on the mortgage.

If this co-grantor can be subrogated in Hatz's mortgage, she stands precisely in the same position that Hatz would, had Hatz been a party in the deed with Weishlee. Could he have claimed more out of the mortgaged premises than the amount left in the grantee's hands? Would he not be estopped by his own deed? Can Elizabeth Weishlee do more than Hatz could have done? Her claim is through Hatz, and shall an innocent purchaser suffer, and

[Sheidle *v.* Weishlee.]

pay more than the consideration-money for the property on account of the acts, errors, or silence of either of the grantors?

Again, the court below having ordered the payment of these arrears of interest, &c., out of the money in court, arising from the sale of the real estate of Elizabeth Weishlee, she cannot now recover in this suit: that proceeding bars her. Also, there is no privity of contract between her and Sheidle.

Under the act of 1850, the suit cannot be sustained in her name, as the husband is alive.

*Franklin,* for defendant.—The first objection made to a recovery in this case is, that Mrs. Weishlee being the wife, is not entitled to the ordinary rights of a surety of her husband.

But the contrary is the doctrine of the courts of equity; and the rule seems well established, that a wife, mortgaging her inheritance for the debt of her husband, is entitled to all the rights and remedies of a personal surety: 2 *Story's Eq. Juris.* sec. 1372 –1373, and cases cited; 2 *Vernon* 437, Huntingdon *v.* Huntingdon; 2 *id.* 604, Pocock *v.* Lee; 2 *Atkyns* 383, Parteriche *v.* Powlett; 3 *Paige Ch. Rep.* 614, Neimcewitz *v.* Gahn.

True, in the early case of Tate *v.* Austin, 1 *P. Wms.* 264, Lord Cowper seems to limit this principle, so as to postpone the wife to all the other creditors of the husband, but gives no reason for the distinction, which is not recognised in other cases.

And Ashley *v.* Tankerville, 3 *Brown's Ch. C.* 545, and S. C. *Cox* 82, was decided on the contrary principle.

So Aguilar *v.* Aguilar, 5 *Mad. Rep.* 414, is opposed to Tate *v.* Austin.

And Gahn *v.* Neimcewitz's Executors, 11 *Wend.* 312, affirming the chancellor's decree in 3 *Paige* 614, above cited, discards Lord Cowper's distinction.

2. She could not resist Hatz's claim; he was entitled to receive the money under his mortgage. She was not therefore bound by the decree.

3. There was sufficient privity of contract to sustain *indebitatus assumpsit*: 8 *Term Rep.* 308; 8 *Taunt.* 365; 14 *Mees. & Wels.* 762; 5 *Wend.* 558; 6 *id.* 284; 7 *id.* 119.

4. A recovery is resisted, because Mrs. Weishlee is alleged to be a married woman; that her husband must be presumed to be still living, as no proof was given of his death. The only evidence on that point on either side was the scire facias on Habacker's judgment, which issued against Elizabeth Weishlee, who survived Jacob Weishlee: on which judgment was entered against her, and her property sold.

But coverture of *feme* plaintiff at the time of suit brought must be pleaded in abatement. It cannot be pleaded in bar, much less

[Sheidle *v.* Weishlee.]

given in evidence under the plea of *non assumpsit: 3 Term Rep.* 627, Milner *v.* Milnes; *Bacon's Abr.* tit. *Abatement,* G.

Again, since the act of 1848, the wife may bring suit to recover property belonging to her, in her own name, without joining her husband. He has no longer any right in nor dominion over it: Cummings's Appeal, 1 *Jones* 272; Goodyear *v.* Rumbaugh, 1 *Harris* 480.

May 20.—PER CURIAM.—Let the judgment be affirmed on the opinion of the judge below.